IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

NEDA MRDALJ,

      Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

No. C15-2009

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* ................................... 2

II.   *PRINCIPLES OF REVIEW* ......................... 2

III.  *FACTS* ............................................. 3
     *A.*   *Mrdalj's Education and Employment Background* ............. 3
     *B.*   *Vocational Expert Testimony from Administrative*
         *Hearing Held on March 1, 2013* ....................... 4
     *C.*   *Vocational Expert Testimony from Administrative*
         *Hearing Held on July 11, 2013* ....................... 5
     *D.*   *Mrdalj's Medical History* .......................... 6

IV.  *CONCLUSIONS OF LAW* ............................. 9
     *A.*   *ALJ's Disability Determination* ....................... 9
     *B.*   *Objections Raised By Claimant* ...................... 11
         *1.*   *Dr. Roland's Opinions* ....................... 11
         *2.*   *Fully and Fairly Developed Record, RFC Assessment, and*
             *Hypothetical Question* ..................... 15
     *C.*   *Reversal or Remand* ............................ 20

V.   *CONCLUSION* ..................................... 21

VI. *ORDER* ........................................... 22

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Neda Mrdalj on February 17, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits.[1] Mrdalj asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, Mrdalj requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On March 31, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'"

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Mrdalj's Education and Employment Background

Mrdalj was born in 1971. At the administrative hearing held on March 1, 2013, Mrdalj, who is a Serbian refugee from Croatia, explained that she completed the eighth grade, and started high school in Croatia, but the Croatian War interrupted her studies in

the tenth grade.[2] She has no education since coming to the United States in 1992. In the past, Mrdalj worked as a sewing machine operator.

### B. Vocational Expert Testimony from Administrative Hearing Held on March 1, 2013

At the administrative hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who:

> can lift or carry occasionally 20 pounds/frequently 10; stand six hours of an eight-hour workday; the understanding because of pulmonary problems rather than orthopedic, can stand or walk no more than 30 minutes continuously; sit six hours of an eight-hour workday; never climb ladders; occasionally stairs; no . . . unprotected exposure to any loud noises; no employments in other than an office -- other than the noise levels anticipated in an office setting; cognitively capable of constant, simple, repetitive tasks as well as semiskilled work; no more than occasional superficial interaction with coworkers; no employments with high production goals such as employments paid by the piece; . . . would best be employed in employments that involve repetitive duties, no concentrated exposure to dust, odors, fumes, gases, pulmonary irritants.

(Administrative Record at 189-90.) The vocational expert testified that under such limitations Mrdalj could not perform her past work as a sewing machine operator because "the noise level would be a four which is loud and then as she described it, she would sit eight hours. I believe it was six out of an eight-hour day in the hypothetical, but it would be that and the loud noise."[3] The ALJ further questioned the vocational expert:

> Q:    All right. Consider a hypothetical individual age 43 to 45 with what would be the equivalent of junior high school education in the United States; [the individual]

---

[2] *See* Administrative Record at 179-80.

[3] Administrative Record at 190.

4

has some understanding of oral English, not written; and the past work experience of [Mrdalj].

[Is] there any employment in the local or national economies for such an individual?

A:    I don't feel that there would be.

Q:    And why not?

A:    Okay. My understanding is the person could only stand for 30 minutes or be on their feet -- stand or walk for 30 minutes at a time --

Q:    Right.

A:    -- and then also the no-production rate pace and then the not able to understand like written English.

Q:    Right.

A:    Those in combination.

Q:    All right. So it's the combination particularly of the difficulty in standing and walking, excuse me, let's start from scratch.

If the individual was exertionally limited to light work, but can only stand or walk for about 30 minutes, it has to -- and cannot participate in high production goals, but rather jobs with less -- less than high production goals and also -- I mean the last aspect of it was, you have one more aspect of it.

A:    It was no -- not written -- not understanding --

Q:    Oh, not understanding written English.

A:    -- written English.

Q:    Okay. All right. All right.

(Administrative Record at 190-91.) ALJ asked no further questions of the vocational expert.

### C. Vocational Expert Testimony from Administrative Hearing Held on July 11, 2013

The ALJ arranged for a second administrative hearing because "upon further reviewing [Mrdalj's] medical file, I felt I needed additional testimony from a vocational

expert and I asked my staff to make a vocational expert available."[4] The ALJ provided vocational expert Deborah Determan with a hypothetical for an individual with:

> no exertional[,] postural or manipulative limitations; however, the individual can have no unprotected exposure to loud noise; as to unprotected exposure, the individual would have difficulty hearing even in an office environment; the individual is cognitively capable of simple, repetitive tasks; no more than occasional interaction with the public; occasional superficial interaction with supervisors and coworkers; no employments with high production goals; avoid concentrated exposure to dust, fumes, odors, gases, and pulmonary irritants.

(Administrative Record at 153-54.) The vocational expert testified that under such limitations, Mrdalj could not perform her past relevant work as a sewing machine operator. Using the same hypothetical, the ALJ added that the individual could only understand "very simple English words or phrases," and asked if there were other types of work in the national economy that the individual could perform. The vocational expert responded that under such limitations, Mrdalj could perform the following jobs: (1) laundry worker, (2) housekeeper, and (3) photocopy machine operator.

### D. Mrdalj's Medical History

On June 13, 2011, Mrdalj underwent an audiogram at the University of Iowa Hospitals and Clinics ("UIHC"). Sue Dunn, M.A., an audiologist, administered the hearing test. Upon testing, Dunn found that Mrdalj had mild sloping to severe sensorineural hearing loss in her right ear, and severe mixed hearing loss in her left ear. Dunn recommended that Mrdalj consider getting a hearing aid. In an addendum dated June 15, 2011, Dr. Scott Graham, M.D., reviewed the audiogram and opined that testing

---

[4] Administrative Record at 148.

showed "hearing loss with bilateral sensory neural components as well as an additional conductive component on the left side."[5]

On August 3, 2011, Mrdalj met with Dr. Brent E. Buhr, M.D., complaining of back pain. Mrdalj reported constant back pain in the left paraspinal and lumbosacral regions. Upon examination, Dr. Buhr found positive paraspinal tenderness to palpation of the left lower lumbosacral region. Dr. Buhr diagnosed Mrdalj with acute low back pain, and prescribed medication as treatment. X-rays from September 2011 showed mild degenerative disc disease at L3-4 and L5-S1.

On September 12, 2011, Mrdalj was referred by Disability Determination Services ("DDS") to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. No medical or mental health records were made available to Dr. Roland. Thus, Dr. Roland relied on Mrdalj's oral history for his evaluation. Dr. Roland noted that Mrdalj is "reportedly unable to secure and maintain employment secondary to, 'a lot of depression and nervousness . . . difficulty breathing at times.'"[6] In reviewing Mrdalj's work history, Dr. Roland noted that Mrdalj worked for 10.5 years "full time for Powers Manufacturing in Waterloo. She was a seamstress. [She] had ethnic conflicts with a female Bosnian coworker secondary to [] being Serbian. They argued and the supervisor fired [Mrdalj] on March 11, 2011."[7] Regarding activities of daily living, Dr. Roland found that depending on Mrdalj's level of anxiety and depression, "she may or may not carry out normal [activities of daily living] including: cooking, laundry and housecleaning."[8] Upon examination, Dr. Roland found that Mrdalj: (1) was oriented to person and year only;

---

[5] Administrative Record at 563.

[6] Id. at 472.

[7] Id. at 473.

[8] Id. at 474.

(2) had "fair" concentration; (3) had intact memory for recent and remote events; (4) had impaired immediate recall and retention based on her inability to remember any of three unrelated words following a five minute delay; and (5) had poor insight. Dr. Roland also administered the Beck Depression Inventory-II test. Mrdalj's responses suggested "severe" depression. Upon objective testing, Dr. Roland also found Mrdalj to have "severe" anxiety. On further testing, Dr. Roland also estimated that Mrdalj's intellectual functioning was below average. Dr. Roland diagnosed Mrdalj with recurrent major depressive disorder with psychotic features, anxiety disorder, possible panic disorder with agoraphobia, and suspected borderline intellectual functioning. Dr. Roland summarized his diagnoses for Mrdalj, her "memory is impaired and her depression needs to be treated more aggressively."[9] Dr. Roland concluded that:

> At this point, [Mrdalj's] physical condition as well as her mental health status would interfere with physically demanding, labor intensive work and/or work more complicated than that available within a repetitive work environment. She has been able to relate satisfactorily to coworkers and supervisors until she had a conflict with a Bosnian coworker over decades long ethnic conflicts in their respective homelands.

(Administrative Record at 476.)

In October 2012, Mrdalj continued to complain of chronic low back pain. She met with Carrie Berry, NP, who noted that X-rays of Mrdalj's lumbar spine from 2012 show arthritis in her back. Upon examination, Mrdalj was tender to palpation in her lower lumbar spine. Berry diagnosed Mrdalj with back pain, and prescribed medication as treatment.

---

[9] Administrative Record at 476.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Mrdalj is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Mrdalj had not engaged in substantial gainful activity since March 11, 2011. At the second step, the ALJ concluded from the medical evidence that Mrdalj had the following severe impairments: asthma, sinusitis with cleft palate repair, hearing loss, back pain, organic mental disorder, affective disorder, and anxiety disorder. At the third step, the ALJ found that Mrdalj did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Mrdalj's RFC as follows:

> [Mrdalj] has . . . a high school education obtained outside of the United States with the ability to understand only very simple English words or phrases and has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Mrdalj] must have no unprotected exposure to loud noises, as to unprotected exposure, [she] would have difficulty hearing even in an office environment; she is

cognitively capable of completing simple repetitive tasks; she can have no more than occasional interaction with the public; she can have no more than occasional superficial contact with co-workers and supervisors; she cannot perform employments with high production goals; and she must avoid concentrated exposure to dust[,] gases, fumes, odors, and pulmonary irritants.

(Administrative Record at 127.) Also at the fourth step, the ALJ determined that Mrdalj is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Mrdalj could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Mrdalj was not disabled.

### B. Objections Raised By Claimant

Mrdalj argues the ALJ erred in two respects. First, Mrdalj argues the ALJ failed to properly evaluate the opinions of Dr. Roland, a consultative examining psychologist. Second, Mrdalj argues the ALJ failed to fully and fairly develop the record with regard to her severe impairments of back pain and hearing loss. Because Mrdalj believes the ALJ failed to fully and fairly develop the record, she also asserts that both the ALJ's RFC assessment, and the hypothetical questions he provided to the vocational experts are flawed and unsupported by substantial evidence.

### 1. Dr. Roland's Opinions

Mrdalj argues the ALJ failed to properly evaluate the opinions of Dr. Roland, a consultative examining psychologist. Mrdalj asserts that the ALJ's reasons for discounting Dr. Roland's opinions are not supported by substantial evidence on the record. Mrdalj further argues the ALJ erred by failing to take Dr. Roland's opinions into consideration when making his RFC determination. Mrdalj concludes that this matter should be remanded for further consideration of the opinions of Dr. Roland, including how Dr. Roland's opinions relate to her RFC.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2008). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070. "If the doctor's opinion is

'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'" *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (quotation omitted). If according the opinion less weight, the ALJ "must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

In his decision, the ALJ addressed Dr. Roland's opinions as follows:

> I give little weight to the assessment of psychological consultative examiner, Dr. Roland. During his evaluation of [Mrdalj], Dr. Roland assessed [Mrdalj] with recurrent major depressive disorder with psychotic features, anxiety disorder not otherwise specified, and rule out panic disorder with agoraphobia and suggested [Mrdalj] had serious limitations in functioning. I find Dr. Roland's assessment of [Mrdalj's] Axis I diagnosis and h[is] functional assessment of [Mrdalj's] limitations is inconsistent with the evidence of record. It appears Dr. Roland relied primarily on [Mrdalj's] subjective complaints and subjective reports in testing that have been found to be only partially credible. Furthermore, Dr. Roland's determinations are inconsistent with the findings from h[is] own evaluation of [Mrdalj]. Specifically, [Mrdalj] was noted to be cooperative and oriented to person[] and year with intact formal judgment, spontaneous speech, normal eye contact, fair concentration, appropriate attention, intact memory, and goal directed thought process, no suicidal or homicidal ideations, and no fine or gross motor difficulties. Furthermore, [Mrdalj's] admitted activities of daily living . . . are inconsistent with [] [the] doctor's opinions. For these reasons, the opinions of Dr. Roland are given little weight.

(Administrative Record at 131-32.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts v. Apfel*, 143 F.3d at 1134, 1138 (8th Cir. 1998) (quotation

omitted). Furthermore, if an ALJ rejects the opinions of an examining physician, the regulations require that the ALJ explain his or her reasons for not adopting such an opinion. *See* Social Security Ruling, 96-8p (July 2, 1996). The Court finds that the ALJ has not fully met these requirements.

Here, the ALJ asserts Dr. Roland's opinions should be afforded "little" weight for three reasons: (1) Dr. Roland relied on Mrdalj's subjective reports; (2) Dr. Roland's determinations are inconsistent with his own evaluation; and (3) Dr. Roland's opinions are inconsistent with Mrdalj's daily activities. The Court finds the ALJ's first line of reasoning confusing for two reasons. First, Dr. Roland stated in his evaluation, an evaluation requested by DDS, that the government agency did not provide him with any medical records for Mrdalj. Therefore, Dr. Roland had nothing to consider or rely on in making his evaluation other than Mrdalj's subjective reports. Second, Dr. Roland administered multiple objective tests and fully examined Mrdalj without noting any concern for Mrdalj's effort or credibility in the testing. Under such circumstances, the Court is unconvinced that Dr. Roland's reliance on Mrdalj's subjective reports constitutes a "good" reason for affording his opinion "little" weight.

The Court is also unpersuaded by the ALJ's second line of reasoning. While the ALJ points out the areas where Mrdalj appeared to have little limitations in Dr. Roland's examination, the ALJ completely fails to address Dr. Roland's findings that are consistent with his opinions that Mrdalj has significant mental health impairments and limitations. For example, the ALJ failed to address Dr. Roland's findings of impaired memory, including impaired immediate recall and retention based on testing, poor insight, objective testing demonstrating "severe" depression and "severe" anxiety, and a finding of borderline intellectual functioning. Thus, the Court finds the ALJ's second reason for discounting Dr. Roland's opinions to be flawed.

14

Lastly, the ALJ found Mrdalj's activities of daily living were inconsistent with Dr. Roland's opinions. Standing alone, the Court finds Mrdalj's ability to take care of her personal hygiene, go grocery shopping, cook, and clean "some times" or when she "felt up to it" to be an insufficient reason for discounting Dr. Roland's opinions. *See Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (Providing the ability "to engage in some life activities, however, does not support a finding that [he] retains the ability to work."). Moreover, Dr. Roland acknowledged that at times Roland was capable of performing some basic activities of daily living similar to the ALJ, such as cooking and cleaning.[10] Nevertheless, Dr. Roland found that Mrdalj had limitations based on her mental impairments.

The Court concludes that the ALJ failed in his duty to fully address, let alone resolve, the conflicts, if any, between Dr. Roland's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848; *see also* Social Security Ruling, 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The Court also finds that the ALJ failed to fully and fairly develop the record with regard to Dr. Roland's opinions. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, the Court finds that this matter should be remanded for further consideration of Dr. Roland's opinions, including consideration of how Dr. Roland's opinions relate to Mrdalj's RFC determination.

## 2. *Fully and Fairly Developed Record, RFC Assessment, and Hypothetical Question*

Mrdalj argues the ALJ failed to fully and fairly develop the record with regard to her difficulties with back pain and hearing loss. Mrdalj points out that at step two of the five-step sequential analysis, the ALJ determined her back pain and hearing loss were

---

[10] *See* Administrative Record at 474.

severe impairments.[11] Mrdalj maintains that the ALJ did not fully and fairly develop the record with regard to these impairments. For example, Mrdalj points out an inconsistency between the first administrative hearing in this case, and the second administrative hearing. At the first administrative hearing, the ALJ provided the vocational expert with hypothetical questions that provided for multiple exertional limitations. At the second administrative hearing, and in his final decision, the ALJ determined that Mrdalj had no exertional limitations. Mrdalj contends that there is no explanation for the inconsistency between the two hearings, and submits that in his final decision, the ALJ failed to fully and fairly develop the record. Similarly, at the first administrative hearing, the ALJ stated on the record that an audiogram should be ordered for Mrdalj to determine the functional limitations associated with her hearing loss, but an audiogram was never ordered. Instead, without reference to any evidence in the record, the ALJ, apparently on his own, determined that Mrdalj should be limited to "no unprotected exposure to loud noises" and acknowledged that Mrdalj "would have difficulty hearing even in an office environment."[12] Mrdalj maintains this matter should be remanded for further development and consideration of the limitations, if any, associated with her back pain and hearing loss. Additionally, because Mrdalj asserts that the ALJ failed to fully and fairly develop the record on these issues, she maintains both the ALJ's RFC assessment and hypothetical questions to the vocational experts are flawed and unsupported by substantial evidence.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at

---

[11] *See* Administrative Record at 125.

[12] *Id.* at 127.

1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citation omitted).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). Significantly, the ALJ's duty exists independent of a claimant's burden to press his or her case. *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) ("'Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case.' *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).").

Moreover, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994)

(citation omitted). 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination [may be purchased] to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim." *Id*. For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

In his decision, the ALJ references Mrdalj's back pain, and notes she had conservative treatment and fairly unremarkable examinations and x-rays.[13] It is odd that the ALJ determined Mrdalj's back pain to be a severe impairment considering the short treatment he gives to her back pain in his decision, and his findings of only minor back problems. Even more perplexing, in the first administrative hearing, the ALJ found multiple significant exertional limitations, presumably due in part to Mrdalj's back issues, but in the second administrative hearing and in his final decision, the ALJ found no exertional limitations for Mrdalj, either in the questions posed to the vocational expert, or in his RFC assessment for Mrdalj. Specifically, in the first hearing the ALJ found the following exertional limitations for an individual with the ability to:

> lift or carry occasionally 20 pounds/frequently 10; stand six hours of an eight-hour workday; the understanding because of pulmonary problems rather than orthopedic, can stand or walk no more than 30 minutes continuously; sit six hours of an eight-hour workday; never climb ladders; occasionally stairs[.]

(Administrative Record at 189.) Based on these exertional limitations, along with the other non-exertional limitations, the vocational expert at the first administrative hearing testified there was no work Mrdalj could perform. However, at the second administrative hearing, and in his RFC assessment for Mrdalj, the ALJ determined Mrdalj had no exertional limitations. Based solely on the non-exertional limitations in the ALJ's RFC assessment

---

[13] *See* Administrative Record at 130.

for Mrdalj, and in the questions posed to the vocational expert at the second administrative hearing, the vocational expert at the second administrative hearing testified that Mrdalj was able to perform jobs that exist in significant numbers in the national economy. The record demonstrates that Mrdalj was treated on multiple occasions for back pain. X-rays from both 2011 and 2012 showed degenerative disc disease. Given the evidence in the record and the unexplained inconsistencies in the ALJ's findings between the first administrative hearing and the second administrative hearing regarding Mrdalj's exertional limitations or lack of limitations, the Court believes that remand is necessary for the ALJ to fully and fairly develop the record with regard to Mrdalj's back pain and any limitations associated with her back problems. In developing the record on this issue, the ALJ should reassess Mrdalj's RFC as it relates to her difficulties with back pain.

Turning to the issue of the audiogram, at the first administrative hearing, the ALJ stated on the record that he intended to "send [Mrdalj] to an audiogram after this hearing[.]"[14] Following the first administrative hearing, Mrdalj was never sent for a consultative audiogram. Based on the record before the Court, there is no explanation for why the ALJ thought Mrdalj needed an consultative audiogram at the first hearing, why if the ALJ deemed she needed an audiogram, she was not sent for one, or why the ALJ changed his mind on Mrdalj needing a consultative audiogram. Because the Court is remanding this matter for further consideration of Dr. Roland's opinions, and further development of Mrdalj's history of back pain, the Court believes the ALJ should reconsider whether Mrdalj needs a consultative audiogram. *See Barrett*, 38 F.3d at 1023 (providing that an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled).

---

[14] Administrative Record at 182.

Lastly, under Social Security law, hypothetical questions posed to a vocational expert "must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985)."). Here, in section *V.B.1*, the Court determined that remand was necessary because the ALJ failed to fully and fairly develop the record with regard to the opinions of Dr. Roland. The Court also determined that remand was necessary to allow the ALJ to both fully and fairly develop the record with regard to Mrdalj's back pain, and reconsider Mrdalj's RFC with regard to her back pain issues. Therefore, the Court believes remand is also necessary to allow the ALJ to reconsider the hypothetical question posed to the vocational expert in order to make sure that it captures the concrete consequences of Mrdalj's limitations based on the medical evidence as a whole, including the opinions of Dr. Roland and full consideration of Mrdalj's back pain issues. *See Hunt*, 250 F.3d at 625 (requiring the ALJ to "capture the concrete consequences of the claimant's deficiencies").

## C. *Reversal or Remand*

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a
> finding of disability and the claimant has demonstrated his [or
> her] disability by medical evidence on the record as a whole,
> we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) properly evaluate the opinions of Dr. Roland, and (2) fully and fairly develop the record with regard to Mrdalj's back pain issues and hearing loss.

## V. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to the opinions of Dr. Roland. The ALJ must provide clear reasons for accepting or rejecting the opinions of Dr. Roland, and shall support his reasons with evidence from the record. The ALJ must also fully and fairly develop the record with regard to Mrdalj's back pain and hearing loss. If necessary, the ALJ should order an audiogram for Mrdalj. The ALJ should also reconsider Mrdalj's RFC assessment in light of his reconsideration of Dr. Roland's opinions and development of the record, particularly as it pertains to Mrdalj's back pain issues. Finally, the ALJ should also provide the vocational expert with a hypothetical question that captures the concrete consequences of Mrdalj's limitations based on the medical evidence as a whole.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 3rd day of December, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA